A. ELTING BRAYTON, Receiver of THE HERKIMER NATIONAL BANK, Respondent, *v.* CHARLOTTE COYE DAGER, Individually and as Executrix, etc., of ADAM DAGER, Deceased, Appellant.

Fourth Department, November 18, 1936.

*Clarence Z. Spriggs,* for the appellant.

*James P. O'Donnell,* for the respondent.

LEWIS, J. We first consider upon this appeal the question whether a distributee of the estate of a deceased owner of national bank stock is liable for an assessment levied thereupon after the latter's death.

When Adam Dager died on June 24, 1932, he was a stockholder of record of The Herkimer National Bank, which ceased operations nine months prior to that date. Thereafter the bank was adjudged insolvent and plaintiff was named by the Comptroller of Currency as its receiver. On July 12, 1934, more than two years after decedent's death, an assessment was levied upon the stockholders of the insolvent bank and a proper demand for payment thereof was made upon defendant who is decedent's widow and is the executrix and sole residuary legatee under his will. The defendant resists this action upon the ground that the assessment which plaintiff now seeks to recover was not levied until after decedent's death; that the claim is not contractual and accordingly is neither a debt of the decedent as a stockholder nor of his estate.

We view the question thus presented in the light of other undisputed facts. The record title to the bank stock in question is in the name of the decedent. It was so recorded in the stock book of the bank on the date of his death and has not since been transferred. In the administration of decedent's estate the defendant, as executrix, has filed no inventory of assets nor has she included in the transfer tax schedules the bank stock in question. She has, however, administered and distributed the estate to the point where there remains in her hands as executrix a sum less than the amount of the assessment now sought to be recovered. Meantime the

defendant has distributed to herself as residuary legatee, property of the estate having a value much in excess of the assessment.

The Federal statute which forms the basis of the assessment provides in part (U. S. Code, tit. 12): " § 64. Individual liability of shareholders; transfer of shares. The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock."

A subsequent section also provides: " § 66. Personal liability of representatives of stockholders. Persons holding stock as executors, administrators, guardians, or trustees, shall not be·personally subject to any liabilities as stockholders;·but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

A recent review of these statutes by the United States Supreme Court was productive of two rulings which we believe must control our decision here. In *Seabury* v. *Green* (294 U. S. 165) certain distributees of a decedent's estate declined to pay a national bank stock assessment similar to the one with which we are now concerned. In that case, as in the case at bar, the assessment was made after the death of the bank stockholder. There, however, the estate had been completely distributed, the executor had been discharged and it was an administratrix *de bonis non* with the will annexed who resisted payment of the assessment. The court ruled that (p. 168) " The liability was not by the Congress intended to be limited to property, actually in the hands of the personal representative when the bank became insolvent or when the Comptroller's assessment was made. Section 64 imposes liability upon the stockholder while living. Section 66 lays the same burden upon his estate. The purpose of the latter is to make the estate liable for the Comptroller's assessment, made after the stockholder's death, just as it is liable for decedent's indebtedness arising before he died."

Contemporaneous with the decision last quoted the same court made its determination in *Forrest* v. *Jack* (294 U. S. 158), in which the obligation of a national bank stockholder was again considered. The opinion, so far as pertinent to our present inquiry, omitting the various citations, states (p. 162): " The liability of stockholders is based upon the statute, § 64. As a general rule, the person in whose name the stock stands on the books of the bank is liable, but the actual owner may be held

although the stock has not been registered in his name. The liability does not altogether cease on the death of the owner but, as limited and defined by § 66, attaches to his estate. The fiduciaries are exempt but the property belonging to the estate is liable as would be the deceased if living. No cause of action arises until the assessment is made by the Comptroller and, so far as concerns the need and amount, his findings are conclusive. He acts under Federal authority, and in respect of determinations, orders and assessments may not be trammeled, controlled or prevented by State laws. In the absence of Federal enactments relating to procedure for enforcement of the liability imposed by § 66, collection is to be made in accordance with State laws governing claims against estates of deceased persons, at least to the extent that such laws are not inconsistent with enforcement of the liability imposed by national authority."

These rulings serve to interpret the purpose of the Federal statutes (§§ 64, 66), quoted above," to make the estate liable for the Comptroller's assessment, made after the stockholder's death, just as it is liable for decedent's indebtedness arising before he died." (*Seabury* v. *Green, supra*, p. 168.) They also indicate that " collection is to be made in accordance with State laws governing claims against estates of deceased persons." (*Forrest* v. *Jack, supra*, p. 163.)

It follows that the assessment in the case at bar is a debt of the decedent which, upon proper proof, may be enforced against the defendant as a distributee. (Dec. Est. Law, §§ 170, 174, subd. 3; Id. § 193.)

There remains for consideration the propriety of a ruling upon evidence which is challenged by the appellant. The defendant offered to prove by her own testimony an oral agreement which, it is said, was entered into by her with the decedent prior to their marriage and which provided for the transfer to her of the property which later comprised the decedent's estate. The evidence was rejected upon plaintiff's objection, invoking section 347 of the Civil Practice Act which provides in part: " Upon the trial of an action * * * a party or a person interested in the event * * *, shall not be examined as a witness in his own behalf or interest, * * * against * * * a person deriving his title or interest from, through or under a deceased person * * * by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased person."

There can be no doubt that the defendant was " a person interested in the event " within the prohibition of the statute. (*Laka* v.

*Krystek,* 261 N. Y. 126, 130; *Matter of Abwender,* 241 App. Div. 566, 569.) We do not believe, however — under the facts before us — that the plaintiff, who is the person against whom defendant's proffered evidence is directed, is " a person deriving his title or interest from, through or under a deceased person * * * by assignment or otherwise." This conclusion is reached after examining the records on appeal in the following cases where the same question was presented to the Court of Appeals and determined adversely to the position now taken by the plaintiff: *Crane* v. *Shuler* (91 Hun, 635; affd. on opinion below, 153 N. Y. 656); *Gillies* v. *Kreuder* (33 Hun, 314; affd., 102 N. Y. 666); *Uhlmann* v. *Brownell* (19 N. Y. St. Repr. 18; affd., 121 N. Y. 652).

As the rejection of the evidence was prejudicial to defendant's rights, we conclude that the judgment and order from which appeal is taken should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, CROSBY and LEWIS, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.